180644 Illinois State Treasurer S. X. Oficio, Donor of the Injured Workers' Benefit Fund v. The State of Riula, Harmony, Atex, Tuco, EIFS Company Assistant Attorney General Mary LaBreck, Illinois State Treasurer S. X. Oficio, Custodian of the Injured Workers' Benefit Fund There is only a single issue in this appeal, whether Section 40 of the Illinois Workers' Compensation Act permits recourse to the fund when an employer complies with the act's requirements that it obtains and maintains insurance, but subsequent to the employee's injury, breaches its contract with its insurer, such that the insurer is no longer liable under the contract. Let me ask you a threshold question. Is this a case of first impression? Yes, Your Honor. No court has specifically ruled on this issue, have they? No court has specifically ruled on whether Section 40 can be applied in a situation where the claim is not that the employer didn't have insurance at that time. Right. Either never obtained it or allowed to pass. And you're arguing that the fund is limited to compensating employees whose employers are, quote, unquote, failed to provide coverage. Well, but if you have insurance and you do something, you don't tender the information to the insurance company and the injury employee is not covered, doesn't that fail to provide coverage? Well, Your Honor, it is unfortunately for the injured worker and we agree that in some circumstances coverage can mean compensation for the injured person, but we are looking here at the plain meaning of the act, and the plain meaning of the act, when it says that it's provided coverage, it doesn't mean that it's covered. It didn't stop there. It gave an additional limiting instruction. It said when the employer has failed to provide coverage as determined under that paragraph D. And so this tells us that we're going to look at paragraph D as a whole to determine what it says to provide coverage means in this specific context. And subsection D refers us to paragraph or subsection A. And at the beginning of paragraph D, the statute sets forth three new penalties for employers failing to provide coverage as required by paragraph A. And paragraph A, in turn, states that the employer must insure his entire liability to pay compensation if some insurance carrier authorized to do business in the state. It also says that the policy must cover all employees and the employee's entire liability. Well, what do you make of section 4A? I think you mentioned it says it requires an employer who avails itself of the provisions of the act to, quote, make provisions for securing payment of the compensation provided for by the statute. Makes provisions. Wouldn't that include the obligation intended to claim to the insurance company? What's the meaning of that phrase? Makes provisions for securing payment. That's what's required under 4A. Wouldn't that encompass tendering the claim to the insurance company? Isn't that part of making provision for securing payment? Well, they're talking here about creating a policy that's going to do what it's supposed to do. And under section, we construed section, subsection A and subsection D as providing that they be included within the scope of the insurance policy. So that means that all of the employees that they have, including this person, no one has disputed that he was within the scope of the insurance policy. And it also has to promise to do all the things that would be necessary to pay compensation when it comes due. So it did make the preparation to make the payments. It did everything it was supposed to do. But, and so the requirement here that is placed on the employer, and you can also look at subsection 485, which says that the employer is to provide evidence of compliance. And here this clearly means he's supposed to provide evidence of a policy. But under your scenario, wouldn't it be illusory? Are you saying the legislature intended? If that's taken literally, then all the company has to do is get insurance, and then whenever there's a claim, not tender it. And say we provide, wouldn't that be an exception to the plain language when cases talk about reaching an absurd result? Why would you ever, ever pay any premiums on it if you didn't have to? This is only to get compensation under the fund. You have to do two things in order to get compensation. One is you have to provide insurance. Right. And then the employer has to fail to. And what's going to happen in those circumstances, but didn't in this case, is that when the employer reaches a contract, then it's going to be liable to pay, and it's going to pay itself. The insurer's not going to pay, and it's going to have to pay. But in this situation, we've established the precedent. You have a company that's about to go under. There's a claim against them. They then decide, well, hey, we're not going to pay this. We're going to file bankruptcy, as they did in this case, and they file bankruptcy. And in that case, who's going to pay? The injured worker suffers the burden in that case, don't they? Yes, but, well, first of all, I don't think that we have any danger that this is going to induce unnecessary breach on the part of the employer. How do we know that? Because he has no reason to breach. It doesn't do him any good. He's already paid the premiums, and that money is going for nothing. Now, the availability of bankruptcy out there is going to mean that he doesn't really have the downside, but he's got no reason to breach. Do we even have to get to any of that? What does the Act require? You went back. It requires that they obtain an insurance policy to cover their employees. No, that is a methodology they can employ to provide coverage, right? Well, there are other ways. Okay, well, we know there are other ways. So, yeah, we just happen to have in this case that the employer elected to indemnify the provision required under the Act to provide coverage through the mechanism of a third-party insurance policy. That's right. Okay. So what is the obligation of the employer to provide coverage, correct? And if the employer doesn't provide coverage and there's no company left, where does that employee turn to in normal circumstances? Well, in this particular case, because of the combination of circumstances, because we have the breach of the contract and we also have bankruptcy occurring at the same time, this particular person is left without benefits, but the Act doesn't undertake to make sure that it is impossible for anyone to ever be left without compensation. There's another situation in which it doesn't cover. A person to no fault of their own can be deprived of compensation because of negligence on the part of their attorney. And in this case, Well, if that's the case, they do have a remedy. It's called legal malpractice. Right, but not under the Act. They don't have the right to go after the client. This person is going to be left without a remedy, period. Well, a person may be left without a remedy in that case, too, because the attorney maybe doesn't approve. This person did have a remedy, which is to go out to the employer. I have two questions for you. First of all, one is a very fundamental question. My reading of the facts in this case indicates that the injured worker in this case died, that subsequent to his death, his daughter was informed that it wasn't necessary to open an estate, but she could file a small estate's affidavit. Subsequent to that time, this application for adjustment claim was amended to provide that the petitioner under that petition was the estate of the deceased person. Was the estate ever opened? As far as I know, no. Well, wait a minute. If no estate was ever opened, then the amended petition is a nullity. So now comes the question of what was the basis for an award in the beginning, in the beginning? Did anyone bother to find out whether this is a legitimate estate that amended this petition? I did not look into that, Your Honor, to see if I assessed that. So you never raised that issue. You never challenged it on his behalf. Wait. Hold on a second. This is a jurisdictional issue, so it didn't have to be challenged below. We have a right to inquire on it on appeal. I don't have the facts available to answer that question, if Your Honor would like me to check. No, no. I just was wondering if anybody knew what happened here. I have a second question. There are two requirements that have to be satisfied before you are obligated to pay. One, it's that the workers' compensation benefits for the injured employee where the employer has failed to provide coverage and has failed to pay benefits. So we know that the employer has not paid benefits in this case. But did the employer provide coverage for this worker? Yes, he did in the sense that we were talking about. Except for one problem. Once he failed to comply with the provisions of the act, he negated the coverage. So now there's no coverage that's been provided. It's been negated by his act. Your Honor, I was thinking where in the act where it says it's negated. It says failed to provide coverage. That's right. It fails to provide coverage as provided in this paragraph D. And paragraph D is all about the duty to obtain and maintain insurance. For whom? The employer has to do it for all his employees. Yes, but if he doesn't do it for this employee. That's right. And he did that. In most cases, the General Assembly decided to assist employees by requiring that they, that employers, obtain insurance. And most of the time, that does result in employees being benefited. But you're dancing around the issue. If an employer violates the terms of the policy such that there is no coverage for an injured worker, how can you say that employer has provided coverage? Your Honor, I would say that no compensation is provided for the injured worker. Oh, no, he has no coverage. You know, the policy defense negates coverage. It doesn't forget about payment. It negates the obligation to perform on the part of the carrier. And that isn't really compensation. That negates the carrier's obligation to perform under the policy. There is no coverage. You're narrowing. You're focusing. A failure to provide coverage to you means you never got an insurance policy in the first place. I mean, that's really what you're saying, isn't that? Somebody went out and purchased a legitimate insurance policy to cover its workers. You're saying that's sufficient. Whether or not they ever do anything after that, it doesn't matter because they have, quote, unquote, failed to provide coverage by initially taking out the policy. And we're saying failure to provide coverage is more than just taking out a policy and then doing nothing. Your Honor, it only, it only means if that's my coverage under 4D. There are other things that will, that will address that problem. But in Section 4D, it says there are other provisions. There are two kinds of provisions in Section 4D. There are provisions for penalties against the employer and there are provisions for benefits for the employee. And both of them define coverage in the same way. They define it as involving an uninsured employer. There is a provision for civil penalties, and I quote, it involves an employer that is not in compliance with its obligation to have workers' compensation insurance. And there's another provision that is addressed to employees that says, that allows an employee, an uninsured employer, to choose between bringing an action in court and a claim before the commission. Both of these, both of these, these are all in the same area. If, if, if the employer fails to comply with the terms of the policy as to a specific employee, then in that particular case, the employer is uninsured as to that employee. The policy is vitiated. The carrier does not have to perform. So as to that employee, the employer is uninsured. Well, Your Honor, under one meaning of insured and coverage, that's true. But our position is that this provision was specifically limiting the idea of what coverage could be and was directed not to do, to look at whether the employer had insurance for the purposes of this provision. Well, that's on dispute. I don't think she disputed. Originally, he had insurance, but it was vitiated, as he said. It was null and void. There was no coverage in actuality when he didn't tender the claim. Well, let me, another way of looking at this is to say that if, that if the general assembly wanted the fund to be available for any claimant whenever they could be otherwise uncompensated, it would have created a different text. It would have said something like, the fund shall be used for payments and benefits for any employer who has denied compensation or who does not receive compensation from either his employer or his employer's insurer. That would have made it very simple. That's not what they did. They didn't do so because provision for recourse to the fund was never intended to be available. It might have been nice if they had defined the term provided, correct? It would have been helpful. It would have been very helpful. It is tightly tailored to the scheme of enforcement of the insurance requirement in subsection A. It appears to me that what you have is an ambiguous statute and both of you have very reasonable interpretations. And if that's the case, how do we interpret the statute? Well, you know, I think that when you look at the statute as a whole and you look at all the other parts, including those provisions I just directed you to where I talked about uninsured employer, and when you also look at all the other decisions that have interpreted this provision, granted none has addressed precisely the same issues here, but they all repeatedly said that it has to do with employees of uninsured employers. And not only are there no decisions concerning the fund that support the state's interpretation of coverage, there are no insurance compliance decisions either. We were unable to find a new decision, correct? Well, if both of you have reasonable interpretations of the statute, then shouldn't the statute be interpreted with a view towards the purpose of the act itself? It's a remedial statute. It's to be liberally construed for the benefit of injured workers. And that would be contrary to your interpretation. It would support your opponent's interpretation. Your Honor, I would say that a liberal construction has its limitations, and two, it doesn't mean that you do anything that would increase the benefits for me. You would have to – your underlying premise to support your argument would have to be that your opponent's interpretation of the statute is unreasonable, not reasonable. If it is as reasonable as yours, your argument fails. So now we have two reasonable interpretations, and we have to pick one. We don't think it's as reasonable, because opposing counsel's argument makes nothing of the phrase, as determined under Paragraph D. It treats it as if it's not even there. And no one in this case has suggested any way that the overrides can be construed to make coverage mean something entirely different in this provision of the Fund than it does in the entire rest of Subsection D, and that it's not concerned about the requirement that the employer insures liability, but instead is concerned about a dispute between the employer and its insurer that, simply because of the unusual circumstances in this case, disadvantages the claimant. Does a 4D require an employer to secure payment of compensation benefits in the case of a compensable injury? That would be a yes or a no. Is that what 4D requires? Is that one of the requirements of 4D? 4D says so many things. I can't put my finger on the exact quotation that Your Honor is talking about at the moment, but its general purpose is that it will result in compensation, but the specific burden that it places on the employer is to obtain insurance that covers all of its employees and that covers all of the potential liability that it may have under the act in the future. Okay, you have time in reply. You have five minutes in reply. Thank you. Counsel, you may proceed. Good morning, Your Honors. Amy Hogan Samanovich for the State in this case. I, again, apologize for my vocal abilities this morning. As Your Honors have been discussing with counsel, Section 4D discusses failure to provide coverage as required by Paragraph A. Paragraph A requires the employer to insure his entire liability with no limits or modifications or its void. So the State's argument in this case is that you are covered if you have inclusion within the scope of the insurance policy and all of the risks are covered by an insurance contract. But by breaching the contract, all of the risks were no longer covered and Magistrate Cormier was no longer included in the scope of that insurance policy. So there was no coverage. There was no coverage. There was a failure to provide coverage. That's correct. It's our position that ATAC failed to cover all of its employees and all of its entire liability as required under Section 4A. If you're not in compliance with your policy, you're not adequately insuring your entire liability. If you effectively limited or modified your policy, making it void, there is evidence of noncompliance with their policy with this declaratory judgment. So we've shown that they're not compliant with their policy. The policy is void. They've not insured their entire liability to provide coverage for all of its employees. One of the examples that the Treasurer discusses is that you can negligibly fail to provide coverage by, for example, failing to make a payment. And the way I took this example was, okay, well, what if you fail to make a payment for one employee? What if your policy covers 10 employees and you get a new hire and you don't tell your insurer that now you have 11 and you're not covering your 11th employee? If you're failing to insure one employee, you're failing to have coverage for your entire liability. And they've effectively failed to insure Mr. Cornyn and the risks associated with all of their liabilities. What about her argument that plain language that says coverage, it doesn't define the events that would cause a lack of it? Basically, she's saying the statute is read that if they have insurance, they have insurance. That's all they have to do. Well, when we've seen terms defined in a statute, you usually see language that says the term coverage means this. Right, which is not here. There's no definition provision in here. Section 4D says it requires an employee to insure as required by Paragraph A. And then Paragraph A has language about it. Again, not an actual definition of the term, but it has language about insuring your entire liability. It talks about no limits or modifications. And so it's our position that the declaratory judgment limited and modified that policy and made it void and no longer fell under the definition of coverage. Counsel, may I ask just a quick question? Can you help clear up the mystery with regard to the state? Was the state open to bring this action? So I don't want to speak too out of turn for what's actually in the record, but it was my understanding that if the assets are under $100,000, then you want to do small estate. You know, I personally did not handle this case in any of the lower proceedings, and I would be unlawful speaking outside of what was actually in the record about doing the small estate because the assets were so low. Well, the point is it's probate law, okay? Small estate's affidavit is an exception to opening an estate, formally opening an estate, and creating an estate allows the transfer if the assets of the deceased, not an estate, but of the deceased are below a threshold limit, okay? And that you can then avail yourself of that section in the probate act to allow transfers of assets according to provisions of a will or provisions of law. But there's no court declaration of a creation of an estate. And I think my question on that issue has more to do with what's the commission's role in that situation in terms of accepting the modification.  Your brief says, after the defendant's death, defendant's daughter completed a small estate's affidavit. Give us a page citation. Thereafter, defendant's application was amended to change the name on the application from Gula Kamini to the estate of Gula Kamini. Now, something's missing in between. If no estate was opened, then who is the estate of Gula Kamini? It's a nonexistent entity. And if it's a nonexistent entity, no judgment can be entered in its favor. So I have a real problem with the jurisdiction to hear the thing to begin with without something to do with the estate. And so I understand, Your Honor, it's your position that the commission would have to be tendered documentation? No, they wouldn't have to be tendered documentation. An estate would have to have been opened. And then the estate becomes an entity. But if no estate was ever opened, then in that particular case, there never was an estate of Gula Kamini. Is there a party here? I mean, what if it was George Burns versus? Yeah. George Burns? The estate of George Burns. Well, there is one probably that's been closed many years ago. But it's a question of who's the claimant here. Okay. And if the estate is not small enough to be opened, then what is the reason? Well, that's probably not exactly. I think we're outside of my expertise. Well, it is probably law. And there's no state too small to be opened. Okay. I don't know that I am prepared to speak any further on the estate issue based upon my knowledge, Your Honors. I don't want to speak unknowingly to this court. This has been raised by the court for valid reasons. I would have to apologize that I'm not prepared to speak on it, Your Honors. Well, apparently it wasn't brought up by the Attorney General's office. Except by our court. I'm too surprised for me, Your Honors. But continue on to your issues. I'm sorry. The other issue that was previously discussed was with regards to, you know, the primary goals in the instrument statute, to which all other, you know, rules are subordinate, is to ascertain and infatuate the intent of the legislature. The intent of the legislature was to create this fund to provide financial protection for injured workers whose employers did not adequately insure their liabilities to pay them benefits. So injured workers can receive some type of compensation when they are failed by their employers. Well, they're not required to go out and buy third-party insurance, are they, to indemnify their obligations under the Act? I'm sorry. They're not obligated to go out and buy insurance to provide third-party indemnity for their obligations under the Act, are they? They can be self-insured. And that's why we also have that second column that says, you know, failure to pay benefits themselves, and they've not been able to pay benefits because they declared bankruptcy in lieu of, you know, because they have not fulfilled their obligation to then pay benefits after the policy is no longer in effect. For these reasons, we do request the Court affirm the Commission's decision that ATEC be able to provide adequate coverage under Section 4. Thank you. Thank you, counsel. You may recline. Thank you, Your Honor. I just want to say a couple of more quick things about the interpretation of coverage. And the legislature is entitled to address problems step by step, and it doesn't have to deal with every possible problem in order to deal with some problems. And it seems clear from the plain language of the Act that it was intending to get a good part of the work done by requiring employers to obtain insurance and by enforcing that with a number of provisions that are all found within Section 4D. And that's why the penalties come from there and that they're used. Only the penalties that come from enforcement of Section 4A are used to pay the employees. It's not a general catch-all. And we also, when you look at what the Act requires about evidence of compliance for this, it becomes clear that they don't, that what they mean is a proof of the insurance policy, that it does the things it's supposed to do. There's no way that they could have produced proof of this compliance at any. I mean, they could not produce proof that they were not going to fail to notify their insurer when the employer got injured, I mean, when the employee got injured. And also, until this point, determining whether the fund should be named has been a fairly simple procedure because the employer, his attorney, and the treasurer and everybody else can look at the commission's website. You can see whether the employer has insurance. And he has no way of knowing at the time he files his claim that there's been a breach, even if he has a copy of the employer's contract. If he, you know, asks for a copy of the contract between the employer and the insurer, that's something that may not come out for quite a while is it didn't do this case, and that means there's going to be uncertainty about whether the fund, the treasurer, should even be involved for a considerable time. And that's another factor we think demonstrates that the General Assembly did not intend to make coverage so broad just for purposes of this provision. This provision is part of an act that does a great many things to encourage benefits to be paid and provide new benefits for employees. But Section 40 has a particular goal and a limited responsibility for doing these things, and that is to make sure that the employee is covered in the sense that he is included within the scope of the policy and that the policy is set up so that it should cover the entire compensation. So here's the rub. You do an excellent job for the people in arguing the strict deliberal construence of the statute, but if this is potentially an absurd result in light of the spirit of the act, and this is sort of this anomaly where the court potentially can look to discern the legislator's intent and use extended stages of instruction to determine that this type of worker deserves an exemption under the act. But, Your Honor, there's nothing absurd here. The act, it takes care of all of the employees whose employers were uninsured. Yes, there is an unusual situation that we have just discovered in which it doesn't take care of the employee. It also doesn't take care of the employee in the unusual circumstance where his employer does something that deprives him. And just as often as the judge, the law has other ways to take care of that, like a malpractice action, but even that can be defeated because the attorney may be judgment-proof. And that's similar to what's happened in this case. The employer is bankrupt, so they're judgment-proof, but that does not mean that this is an absurd meaning of the statute. It just means that what the general assembly has done here is more limited than we might wish it had done. And in the future, it might amend that provision to say something that suggests that it covers whenever the employer or its insurer does something. And why can't we interpret fair to provide coverage as a fair detentive to claim? Because at the end of the day, you're saying coverage was provided and yet you've acknowledged this claimant goes forth with no remedy, correct? You're saying it's a statutory anomaly, but that's still the bottom line, is that he didn't get coverage. Because if you were right, he would have had coverage. He would have been paid. But coverage in the sense that you're talking about. He took out a policy. That's coverage, according to you. But that's not the intent, the spirit of the act. And if you start from that premise and work backwards, it seems to fall in this anomaly situation wherein case law gives the court the opportunity to, again, discern the legislator's intent. And if you look at the spirit of the act, this is the type of individual that is entitled potentially under the act to compensation. So I'm coming from a different angle, and I just want to make a response. And all I can say here is that this is a limited provision. The act has a purpose of providing financial protection for employees. This is true, but it does many things to achieve that result, and it limits them. And in this case, what it was doing is it developed Section 4D as a provision to enforce the insurance requirements. And everything in 4D is limited to that goal. But you keep saying limited, but is the overall, is it not the overall purpose of the Workers' Compensation Act of the State of Illinois to provide compensation to injured workers? Is that not the overarching purpose of the act? That is the overarching purpose. Well, in this case, that goal is not being met. Your defense is it's limited. Under your argument, that goal of the legislature is not being met in this case, clearly. Not every provision effectuates the entire, the goal of the entire act. This one has a limited. In the Murph case that we cited in our reply brief, the claimant argued that because the act had a purpose of giving him benefits, then it should allow him to claim additional vocational rehabilitation benefits after the final provision. And the court said that that, that liberal construction would not be enough to get him there because that would require the court to read out Section 9H of the act, which said that it would specify certain circumstances in which you could file something. And you had to show whether there was physical change in physical disability. Well, we obviously, just basically, you can't read provisions out of the act. How, if this were held against you, or, I mean, you did not prevail, how would that be, what would it be reading out of the act? It would be reading out of the act a provision that limits the failure to provide coverage to, as determined under this paragraph D, that those words would become a melody, entirely superfluous. And it kind of puts meat on that framework. Go ahead. What would it be reading out? I'm sorry? What would it be reading out? It would be reading out the phrase, in the phrase that defines eligibility from the fund, it says, provides benefits to employees when the employer has failed prior to coverage, as determined under this paragraph D. No, no, I don't want to go there. I'm trying to focus on the act, what language is being read out. You're saying it's going to read out the? It's going to read out the reference to, it's going to read, the provision in section 4B about the fund, it right now means when the employer has failed to provide coverage as determined under this paragraph D. And it's going to read all the words, as determined under this paragraph D. And what does, as determined under paragraph D, in the act say? What part of D, paragraph D is it that? Well, it says, as determined under this paragraph D, and then there are several places in paragraph D that give content to failure to provide coverage for this particular context. And the criminal penalty provisions use the identical language, failed or fails to provide coverage, and they say fails to provide coverage under paragraph A. So then we look to paragraph A to see what they mean, and what those say is, ensure the entire liability and make sure that all of your employees are within the scope of the policy and that it covers the entire liability that you may incur. So we've really got a question as to whether a procedural screw-up between the employer and the insurance company results in a failure to provide coverage for this. Right. That's simply what this case is about. Yes. Okay. Thank you. Thank you, counsel, both, for your arguments in this matter. It will be taken under advisement and written disposition.